## CIRCUIT COURT OF THE CITY OF RICHMOND

Ella Lucille West

v.

Nationwide Mutual Ins. Co. and
Government Employees Ins. Co.

March 6, 1975

Case No. 7311

By JUDGE ALEX H. SANDS, JR.

It appears from the allegations in the motion for judgment in this matter, together with the exhibits filed therewith, that the following facts are controlling in the Court's consideration of the demurrers now before it for ruling.

On March 31, 1969, Ella Lucille West was injured in an automobile collision between a vehicle operated by one John Don Cox, in which the plaintiff was riding, and a vehicle operated at the time by Roy Harrison Mayo. There were other parties injured in this collision, their names not being material to the issues now before this Court.

At the time of this collision, Nationwide Mutual Insurance Company had in effect a policy of automobile liability insurance covering the vehicle operated by Cox (in which the plaintiff was a passenger), Travelers Insurance Company had in existence a policy of automobile liability insurance covering the vehicle operated by Roy Harrison

Mayo, and Government Employees Insurance Company had in effect a policy of automobile liability insurance issued to the husband of the plaintiff, such policy affording coverage to the plaintiff under the uninsured motorist endorsement thereof in any situation as to which such uninsured motorist endorsement would be applicable.

Plaintiff, Ella Lucille West, instituted an action in the Circuit Court of Stafford County against both drivers, John Don Cox and Roy Harrison Mayo, and the trial of this case on February 1, 1973, resulted in a verdict in favor of the defendant Mayo and against the defendant Cox in the amount of $10,000, judgment being entered by the court upon such verdict.

By letter dated May 12, 1969, the plaintiff, Ella Lucille West, notified Nationwide Mutual Insurance Company of her claim and received no response from Nationwide to her communication.

At the time plaintiff instituted her suit against Cox and Mayo, a copy of the motion for judgment was duly served upon Government Employees Insurance Company, presumably upon the theory that Cox was an uninsured motorist; and as a result, Government filed an appearance on behalf of Cox, although Cox was represented at the trial by counsel for Nationwide which carried liability insurance upon the vehicle which Cox was operating at the time of the collision.

By letter dated January 31, 1973, (one day prior to the trial of the case on February 1, 1973), counsel for Nationwide advised counsel for plaintiff, counsel for Mayo, and counsel for Government Employees, that Nationwide had exhausted its entire coverage on Mayo in settlement of other claims arising out of the collision, that Nationwide was, nevertheless, providing Cox with a defense under the terms of his policy, even though there were no insurance proceeds remaining to be applied to any judgment which might be rendered against him in the case, and stating that Mr. Cox had not cooperated with Nationwide, and that Nationwide would rely upon such failure of cooperation as a defense.

Execution against John Cox having been returned unsatisfied, the plaintiff, Ella Lucille West, instituted the present proceeding against Nationwide and Government in the amount of $10,000 upon the theory that Nationwide

is responsible for satisfaction of her judgment against Cox under the terms of its policy, and that Government is also answerable to the plaintiff for the payment of her judgment against Cox under its uninsured motorist endorsement of its policy issued to her husband, Calvin B. West.

To the last mentioned action, both defendants have filed demurrers which are now before the Court for disposition. The demurrers, being based upon separate grounds, will be considered separately.

### Nationwide's Demurrer

Since at this stage of the pleadings it is undisputed from the allegations of the motion for judgment and the exhibits filed therewith that Nationwide has exhausted the limits of its coverage and has extended to Cox a defense in the initial case instituted against him and Mayo, there is nothing in the pleadings which charges Nationwide with any breach of contract or duty owing to the plaintiff, Ella Lucille West. There is no allegation that Nationwide acted in any manner wrongfully in exhausting its policy limits in the settlement of other claims or that Nationwide breached any provision in its contract of insurance which was outstanding at the time. For this reason alone the demurrer as to Nationwide must be sustained. Plaintiff will, however, be granted leave to plead over, if she be so advised.

While it is unnecessary at this juncture to consider the effect, if any, of Nationwide's action in having exhausted its policy limits in settlement of claims other than the plaintiff's and to the exclusion of plaintiff's claim, since plaintiff's counsel, upon the argument of the demurrer, has taken the position (although has not alleged it in the pleadings), that Nationwide wrongfully exhausted its limits, this situation might be appropriately considered at this time. While the question as to whether an automobile liability insurer in a situation where there are multiple claimants against the insured may exhaust its coverage in the settlement of some of the multiple claims to the exclusion of others has created a good deal of interest in the academic field, yet the case law in the country appears to be completely one-sided to the

effect that an insurer has an absolute right to so proceed, provided in so doing it exercises good faith. (See an excellent 32-page article in 70 *Harvard Law Review* by Robert E. Keeton, then professor of Law at Harvard Law School, entitled "Preferential Settlement of Liability-Insurance Claims," and also an excellent note found in 43 *Yale Law Journal*, beginning at page 136 on the same subject.)

In the case of *Richard* v. *Southern Farm Bureau Casualty Ins. Co.*, 254 La. 429 223 So. 2d 858 (1969), it was held that where multiple claims arose out of an accident, the action of the liability carrier in entering compromise settlements with some claimants to the exclusion of others was justified absent bad faith, even though such settlement depleted or even exhausted its coverage leaving other claimants no recourse against the insurer. The court rejected the plaintiff's argument that there was a duty on the insurer to ratably distribute the limits among all claimants, or in the alternative to seek a declaratory judgment from a court.

In the case of *Bennett* v. *Conrady*, 180 Kan. 485, 305 P.2d 823 (1957), there were five claimants against a single defendant. Three of the claimants reduced their claims to judgment. The insurer, thereupon, effected settlement with the two claimants not holding judgments, such settlement reducing the fund to the extent that the three judgment creditors could not be fully satisfied. The court held that this procedure was justified. In refusing to hold the insurer liable for the resulting losses sustained by the three judgment creditors, the court said:

> This (i.e. penalizing the insurer for making the settlements) would indeed be a step toward doing violence to and would be contrary to public policy because settlements are universally recognized and encouraged by courts as being in furtherance of public policy. (Parenthesis added.) At 828.

Directly in point with the issue under discussion is the case of *Harmon* v. *State Farm Mutual Automobile Ins. Co.*, 232 So. 2d 206 (Fla. 1970). In holding that

an automobile insurance carrier was justified in exhausting the limits of its policy in settlement of some of the claims of multiple claimants to the exclusion of others, the court stated:

> It is generally held that where multiple claims arise out of one accident, the liability insurer has the right to enter reasonable settlements with some of those claimants, regardless of whether the settlements deplete or even exhaust the policy limits to the extent that one or more claimants are left without recourse against the insurance company. At 207.

### Government's Demurrer

The demurrer filed on behalf of Government presents the single issue of whether or not under the allegations of the motion for judgment and exhibits filed therewith, and all reasonable inferences which may be drawn therefrom, Cox, at the time of the accident, was an "uninsured motorist" in contemplation of Code § 38.1-381(c). The pertinent portion of this section reads:

> and the term "uninsured motor vehicle" means a motor vehicle as to which . . . there is insurance, but the insurance company writing the same denies coverage thereunder for any reason whatsoever, including failure or refusal of the insured to cooperate with such company.

It is conceded by the plaintiff and, in fact, is alleged in the motion for judgment, that at the date of the accident Cox was not in fact an uninsured motorist, but on the contrary was covered by the Nationwide policy then in existence. It is further apparent from the exhibits filed with the motion for judgment that Nationwide discharged each and every obligation which it owed its insured, Cox, under the terms of its policy in that it not only exhausted its policy limits in the payment of claims settled against Cox, but also, in spite of his lack of cooperation, extended him full representation at the trial of his case. Plaintiff, however, relies upon that portion of Nationwide's

letter written the day immediately preceding the trial to all parties in interest which asserts that Nationwide expects to avail itself of the defense of lack of cooperation on the part of Cox, its assured. Plaintiff asserts that this automatically renders Cox an "uninsured motorist" in contemplation of Code § 38.1-381(c). There is no doubt whatsoever but that this language is equivalent to a denial of liability insofar as the uninsured motorist statute referred to above is concerned; provided, however, that the *conduct* of the insurer is consistent with the allegations, for the primary consideration is not only the writing emanating from the insurer but the conduct as well. *Grossman v. Glens Falls Ins. Co.*, 211 Va. 195 (1970). In the case at bar, the language in Nationwide's letter, written the day before trial, to the effect that it would rely upon the defense of noncooperation, was absolutely meaningless for the Company had discharged the first part of its contractual obligation by paying out its policy limits in settlement of claims against the insured and had discharged its only remaining duty, or rather was in the act of discharging its remaining duty, in furnishing its assured a defense at the trial of the case. It is, accordingly, held that as the pleadings stand at this time, there is no basis upon which Nationwide could be held to have denied coverage under its policy. For this reason, there is no basis upon which Cox could, at any time, have been held to have been an "uninsured motorist" in contemplation of § 38.1-381(c) of the Code.

For the above reasons, the demurrers of both of the defendants are sustained with leave to the plaintiff to plead over, if she be so advised, within fifteen days of the entry of the order sustaining the demurrers, copy enclosed herewith.